IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

STACY DEWAYNE ALLEN                                                    PLAINTIFF

v.                              Case No. 2:21-cv-00172 KGB

MARCO MCCLENDON, *et al.*                                            DEFENDANTS

## OPINION AND ORDER

Plaintiff Stacy Dewayne Allen alleges that defendants City of West Memphis Mayor Marco McClendon, Human Resource Director Janice Coleman, Acting Chief of Police Brent Bradley, Former Chief of Police Eddie West, and West Memphis City Council Members James Holt, Tracy Catt, Dr. Gheric Bruce, Melanie Hutchinson, Charles Wheeless, Wayne Croom, David Murray, Lorraine Mohammed, Helen Harris, and Willis Mondy (collectively "Defendants") violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C § 621 *et seq.* ("ADEA") (Dkt. No. 1). Mr. Allen, a Major with the West Memphis Police Department, also asserts a state law libel claim against Defendants (*Id*.). Before the Court are Defendants' motion for summary judgment (Dkt. No. 34); Mr. Allen's motion for decision without a hearing, which the Court construes as a motion for summary judgment under Federal Rule of Civil Procedure 56 (Dkt. No. 38, at 1); Mr. Allen's amended motion for decision without a hearing, which the Court construes as an amended motion for summary judgment under Federal Rule of Civil Procedure 56 (Dkt. No. 39-6, at 1);[1] Mr. Allen's motion for summary judgment (Dkt. No.

---

[1]  Because original documents were submitted to the Court in error and because the Court, at the request of Mr. Allen, ordered the Clerk to remove from the public record unredacted versions of exhibits to Mr. Allen's original filings, the Court believes that Docket Entry No. 39-6 is Mr. Allen's complete amended motion for decision without a hearing (*see* Dkt. Nos. 41, 45).

60); and Defendants' motion to strike (Dkt. No. 62).  For the following reasons, the Court grants Defendants' motion to strike (Dkt. No. 62), deems the facts in Defendants' statement of undisputed material facts admitted, and strikes Mr. Allen's motion for summary judgment and statement of undisputed material facts (Dkt. Nos. 60, 61).  The Court grants Defendants' motion for summary judgment (Dkt. No. 34), denies as moot Mr. Allen's motion for decision without a hearing (Dkt. No. 38), and denies Mr. Allen's amended motion for decision without a hearing (Dkt. No. 39-6).

### I.    Procedural History

Defendants filed a motion for summary judgment on May 12, 2023, pursuant to an Order granting the parties an extension of time to file motions for summary judgment (Dkt. Nos. 33, 34).  On the same day, Mr. Allen filed a motion for decision without a hearing (Dkt. No. 38).  On May 13, 2023, Mr. Allen filed an amended motion for decision without a hearing (Dkt. No. 39-6).  Defendants responded to Mr. Allen's amended motion for decision without a hearing (Dkt. No. 43).  Mr. Allen filed a brief in support of his response to Defendants' response to Mr. Allen's motion for summary judgment (Dkt. No. 46).

Pointing out that Mr. Allen had not filed a response to Defendants' statement of undisputed material facts, Defendants request that the Court deem their facts admitted (Dkt. No. 47).  In response, Mr. Allen filed an opposed motion to file out of time, requesting permission to file "Plaintiff's Amended Response to Defendant[s'] Response to Plaintiff's Motion for Summary Judgment" (Dkt. No. 50, at 1).  In an Order dated February 5, 2024, the Court denied Defendants' motion to deem admitted and granted Mr. Allen's motion to file out of time (Dkt. Nos. 47, 50).  The Court ordered Mr. Allen to file within 14 days of the date of the Order his response to Defendants' motion for summary judgment, including his response to Defendants' statement of undisputed material facts (Dkt. No. 55).

On February 20, 2024, Mr. Allen filed an amended unopposed motion for extension of time (Dkt. No. 58).  The Court granted the requested extension and gave Mr. Allen until February 27, 2024, to respond to Defendants' motion for summary judgment, including to Defendants' statement of undisputed material facts (Dkt. No. 59).  On March 27, 2024, Mr. Allen filed a motion for summary judgment, and in the early morning hours of March 28, 2024, Mr. Allen filed a statement of undisputed material facts including an appendix (Dkt. Nos. 60, 61).  Mr. Allen did not file a response to Defendants' motion for summary judgment or Defendants' statement of undisputed material facts.

Defendants filed a motion to strike Mr. Allen's motion for summary judgment and statement of undisputed facts and renewed motion to deem facts admitted (Dkt. No. 62).  Mr. Allen responded to Defendants' motion to strike (Dkt. No. 66).

## II.    Motion To Strike And To Deem Facts Admitted

To determine whether there are any genuine issues of material fact in dispute in this matter, the Court will first consider Defendants' motion to strike plaintiffs' second motion for summary judgment and statement of undisputed material facts and to deem facts admitted (Dkt. No. 62). Defendants bring their motion under Federal Rules of Civil Procedure 10(c) and 12(f) and Local Rule 56.1 (Dkt. No. 62, ¶¶ 7–8).

Defendants move to strike Mr. Allen's motion for summary judgment and statement of undisputed material facts and renew their motion to deem facts admitted (Dkt. No. 62). Defendants state that they filed their motion for summary judgment on May 12, 2023, and Mr. Allen's response to their motion for summary judgment was due on May 26, 2023, pursuant to Local Rule 7.2(b) of the United States District Court for the Eastern and Western Districts of Arkansas and this Court's Amended Final Scheduling Order (Dkt. No. 62, ¶ 1).  When Mr. Allen

failed to file a response by the deadline, Defendants filed a motion for facts to be deemed admitted pursuant to Local Rule 56.1 (*Id.*, ¶ 2). Mr. Allen filed an objection to Defendants' motion for facts to be deemed admitted, stated that his failure to file a response to Defendants' motion for summary judgment was due to an inadvertent error, and stated that counsel did not mean to skirt or ignore the Court's Order (*Id.*, ¶ 2). On May 30, 2023, Mr. Allen filed an opposed motion to file out of time, requesting that the Court allow him to file a response to Defendants' motion for summary judgment out of time given that his counsel misread the Court's Order (*Id.*, ¶ 3).

On February 5, 2024, the Court denied Defendants' motion to deem facts admitted and granted Mr. Allen's opposed motion to file out of time (*Id.*, ¶ 4). The Court gave Mr. Allen 14 days to file a response to Defendants' motion for summary judgment, including a response to Defendants' statement of undisputed material facts (*Id.*, ¶ 4).

As set forth by Defendants in the motion to strike, on February 20, 2024, Mr. Allen filed an amended unopposed motion for extension of time (*Id.*, ¶ 5). In the motion, however, Mr. Allen requested an extension of time to file "Plaintiff's Statement of Undisputed Material Facts, and Plaintiff's Motion for Summary Judgment." (Dkt. No. 58, at 1). On February 21, 2024, the Court, not realizing or acknowledging in its Order that Plaintiffs were requesting an extension of time to file documents other than the documents the Court had originally granted Mr. Allen an extension of time to file, entered an Order granting the motion and extending the time "for Mr. Allen to *respond to Defendants' motion for summary judgment, including to defendants' statement of undisputed material fact*" until February 27, 2024 (Dkt. No. 59 (emphasis added)).

Instead of filing a response to Defendants' motion for summary judgment and defendants' statement of undisputed material facts as directed by the Court, on February 27, 2024, Mr. Allen filed an untimely second motion for summary judgment, and in the early morning hours of

February 28, 2024, Mr. Allen filed a technically untimely statement of undisputed material facts which the Court considers to be a statement of undisputed material facts in support of Mr. Allen's motion for summary judgment (Dkt. Nos. 60, 61).  In the motion for summary judgment, and in the statement of undisputed material facts, Mr. Allen seeks to assert what appear to be new claims of "retaliation, a hostile work environment, and harassment under Title VII" based on what he asserts is a "continuing pattern and practice" (Dkt. No. 60, ¶ 1).  Mr. Allen states that he is relying on the same first 20 exhibits that he attached to his amended motion for decision without a hearing, but he also seeks to add five additional exhibits, which the Court notes were all generated after the Equal Employment Opportunity Commission ("EEOC") issued its right to sue letter in this matter and after Mr. Allen filed his complaint in this lawsuit (Dkt. No. 60, ¶ 4).

Finally, Mr. Allen appears to incorporate the arguments set forth in his amended motion for decision without a hearing, response to Defendants' motion for summary judgment, and his statement of undisputed material facts (*Id*., ¶ 5).  In his statement of undisputed material facts, Mr. Allen asserts new facts, including facts that occurred after the EEOC issued its right to sue letter relevant to this matter and after Mr. Allen filed his complaint in this lawsuit (Dkt. No. 61, ¶¶ 13–17, 47–53).  The deadline for filing motions for summary judgment in this case according to the Court's Amended Final Scheduling Order as extended once by the Order of this Court was May 12, 2023 (Dkt. No. 62, ¶ 7).

Mr. Allen responds in opposition to the motion to strike (Dkt. No. 66).  Mr. Allen contends in his opposition to Defendants' motion to strike that he filed a motion for summary judgment and a statement of undisputed facts on February 27, 2024, after receiving "leave from the court to do so" (Dkt. No. 66, at 1).  Later in his response, Mr. Allen states that he filed a "separate Motion for Summary Judgment and a Statement of Undisputed Material Facts" in "accordance with the

Court's February 5, 2024, order." (Dkt. No. 66, at 2).  Mr. Allen does not address Defendants' motion to deem their statement of undisputed facts admitted; Mr. Allen has never responded to this motion.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous matter."  While Rule 12(f) is understood to provide courts with "liberal discretion," the Eighth Circuit Court of Appeals has stated that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

Defendants argue that here the Court in both its February 5, 2024, Order and its February 21, 2024, Order specifically granted Mr. Allen an extension of time to file a response to Defendants' motion for summary judgment, including a response to Defendants' statement of undisputed material facts (Dkt. Nos. 55, 59).  Instead of filing a response to Defendants' motion for summary judgment, including a response to Defendants' statement of undisputed material facts, Mr. Allen filed a second motion for summary judgment and statement of undisputed material facts outside of the time permitted by the Court's Amended Final Scheduling Order (Dkt. Nos. 29, 33, 60, 61).  Defendants argue that the Court should strike these  filings made by Mr. Allen as untimely and unresponsive to the Court's Order.

Reviewing the filings, the Court recognizes that, in filing his amended unopposed motion for an extension of time requesting a seven-day extension of time, Mr. Allen requested an additional seven-day extension of time to file "Plaintiff's Statement of Undisputed Material Facts, and Plaintiff's Motion for Summary Judgment." (Dkt. No. 58).  While the Court's Order did not

specifically address this somewhat misleading request to make different filings in the seven-day motion for extension of time than the Court granted Mr. Allen permission to file in its Order granting the original extension of time, in both its initial Order and in its Order granting the seven-day extension of time, the Court was clear that it was specifically granting Mr. Allen an extension of time "to respond to defendants' motion for summary judgment, including to defendants' statement of undisputed material facts" (Dkt. Nos. 55, 59).  If Mr. Allen did not understand the Court's Orders or sought relief different from what was granted, he should have filed another motion seeking clarification from the Court.

As Defendants point out, if the Court were to permit Mr. Allen's second motion for summary judgment it would be in violation of Local Rule 7.2(a) because Mr. Allen's second motion for summary judgment is not accompanied by a brief in support.  Additionally, Mr. Allen's second motion for summary judgment was filed 291 days after the deadline for filing motions for summary judgment set forth in the Court's Amended Final Scheduling Order, which was amended once to allow the parties additional time to file summary judgment motions (Dkt. Nos. 29, 33).

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent."  Eighth Circuit precedent establishes that, "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule."  *Sherman*, 532 F.3d at 709 (emphasis in original) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)).  Here, the Court modified its Amended Final Scheduling Order to permit Mr. Allen to respond to Defendants' motion for summary judgment, including their statement of undisputed facts.  In his opposition to Defendants' motion to strike, Mr. Allen has not established good cause for the Court to modify its scheduling order further to permit him to file a second motion for summary judgment and statement of undisputed material

facts.  The proposed motion for summary judgment is not accompanied by a brief and does not

add to Mr. Allen's amended motion for judgment without a hearing, except to pursue what Mr.

Allen asserts are ongoing claims of "retaliation" and "hostile work environment" but what appear

to this Court to be unexhausted claims that have arisen after Mr. Allen received his right to sue

letter and filed his complaint in this lawsuit (Dkt. No. 60).  Most importantly, however, Mr. Allen

did not, as he suggests, comply with the Court's Orders (Dkt. No. 66, at 2).  For these reasons, the

Court grants Defendants' motion to strike (Dkt. No. 62).  The Court directs the Clerk to strike from

the record Mr. Allen's motion for summary judgment and statement of undisputed material facts

(Dkt. Nos. 60, 61).[2]

Also before the Court is Defendants' renewed motion to deem admitted their statement of

undisputed material facts to which Mr. Allen has not responded (Dkt. Nos. 62, ¶ 8; 66).  The United

States District Court for the Eastern and Western Districts of Arkansas requires a non-moving

party to supply the Court with a statement of material facts "as to which it contends a genuine issue

exists to be tried."  *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011).

Local Rule 56.1(c) provides that "[a]ll material facts set forth in the statement filed by the moving

party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement

filed by the non-moving party under paragraph (b)."  Defendants assert that, because Mr. Allen

not only failed to respond to their motion for summary judgment but also failed to file a "separate,

short and concise statement of material facts as to which [he] contends a genuine issue exists to be

---

[2]    In reaching this decision, the Court has reviewed Mr. Allen's motion for summary
judgment (Dkt. No. 60).  In this filing, Mr. Allen purports to add a new hostile work environment
claim and a new retaliation claim that were not pled in his operative complaint.  Those claims are
not properly before the Court.  Further, Mr. Allen's statement of undisputed material facts
references a timeline that Mr. Allen created based on facts he maintains have occurred since he
filed his operative complaint (Dkt. No. 61).

tried" in response to their motion, Defendants' statement of undisputed facts should be deemed admitted (Dkt. No. 63, at 4). In his response, Mr. Allen has not responded to this argument, and the Court gave Mr. Allen an opportunity to file a response to Defendants' statement of undisputed facts (Dkt. Nos. 55, 59, 66). Accordingly, the Court grants Defendants' motion to deem the facts in their statement of undisputed facts admitted (Dkt. No. 62).

### III.    Statement Of Facts

In compliance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, Defendants filed a separate statement of undisputed material facts along with their motion for summary judgment (Dkt. No. 36). As set forth in this Order, Mr. Allen did not file a response to Defendants' statement of undisputed facts. Accordingly, the Court deems Defendants' statement of undisputed facts admitted (Dkt. No. 36). Mr. Allen did not file a separate statement of undisputed material facts along with his motion for decision without a hearing or amended motion for decision without a hearing (Dkt. Nos. 38, 39-6). However, Mr. Allen did include a statement of the facts in his amended motion for decision without a hearing (Dkt. No. 39-6, at 2–5). Defendants' respond to Mr. Allen's undisputed facts (Dkt. No. 44, at 3–4). To the extent that Mr. Allen's statement of facts add to and do not conflict with Defendants' facts deemed admitted, Mr. Allen's facts have been included in the statement of facts as noted herein.

1.      On September 13, 2007, the City of West Memphis, Arkansas, (the "City") hired Mr. Allen, an African American male, to work as a patrolman for the West Memphis Police (Dkt. No. 36, ¶ 1).

2.      During his employment with the City, Mr. Allen was promoted up the ranks and received pay increases (*Id.*, ¶ 2).

3.     On January 26, 2019, Mr. Allen was promoted to the rank of Major, which is the position and title that he holds today (*Id*., ¶ 3).

4.     At the time of the events described in his complaint, Mr. Allen's duties included supervising Dispatch, Evidence, and Records.  His direct supervisors were Assistant Chief Robert Langston and Chief Eddie West (*Id*., ¶ 4).

5.     On September 23, 2020, Mr. Allen and Lieutenant Charles Burch were placed on administrative leave with pay pending an investigation into complaints made against them (*Id*., ¶ 5).

6.     Lieutenant Burch is a white male (Dkt. No. 44, at 4, ¶ 3).  Mr. Allen considers Lieutenant Burch a comparator (*Id*.).

7.     Pursuant to the West Memphis Police Department Internal Affairs Policy, Human Resources ("HR") Director Janice Coleman informed Mr. Allen that he was the subject of an internal investigation for complaints of harassment and intimidation (Dkt. No. 36, ¶ 6).

8.     Pursuant to the West Memphis Police Department Internal Affairs Policy, depending on the nature and seriousness of the allegations, an employee under investigation will remain in full-pay and may be temporarily relieved of all duties (*Id*., ¶ 7).

9.     Mayor McClendon decided to hire an outside, independent investigator to avoid any potential conflicts of interest and to ensure a thorough, non-biased investigation was performed (*Id*., ¶ 8).

10.     Chapter 6, Internal Integrity and Discipline, Paragraph (H)(1) of the West Memphis Police Department Policy and Procedure Manual states in pertinent parts that the department will create a Discipline Review Officer (D.R.O.).  This officer's responsibility is to oversee the process to assure the fair and consistent punishment for all employees (Dkt. No. 44, at 5–6, ¶ 7).

11.     On October 1, 2020, the West Memphis City Council voted to hire an outside, independent investigator to conduct an investigation into complaints made against Mr. Allen and Lieutenant Burch.  The City's internal affairs policy does not prohibit outside investigations (Dkt. No. 36, ¶ 9).

12.     The City initially hired Greg Martin as the outside investigator.  The City then became aware of information involving the investigator.  To avoid impropriety, the City began searching for a new investigator.  Ultimately, Mayor McClendon hired Florence Johnson with Johnson and Johnson Law firm from Memphis, Tennessee (*Id*., ¶ 10).

13.     Mr. Allen believes that the hiring of an outside investigator violated the City of West Memphis's internal affairs policy (*Id*., ¶ 11).

14.     On December 17, 2020, Ms. Johnson began an outside investigation into the complaints made against Mr. Allen and Lt. Burch (*Id*., ¶ 12).

15.     On or around December 17, 2020, Mayor McClendon, pursuant to his authority under Ordinance 212, chose to supervise personally the conduct of Lieutenant Burch by investigating the complaint made against him (Dkt. No. 36, ¶ 13).  Mayor McClendon chose to investigate the complaint against Lieutenant Burch because it was only one complaint, and he believed he could address the situation (*Id*.).

16.     As part of Mayor McClendon's investigation into Lieutenant Burch, Mayor McClendon reviewed the allegations of the complaint and spoke with Lieutenant Burch and the complainant (*Id*., ¶ 14).

17.     On December 29, 2020, Mayor McClendon concluded the investigation into Lieutenant Burch, and Lieutenant Burch was permitted to return to work (*Id*., ¶ 15).  Mayor

McClendon found there was insufficient evidence to proceed with suspension or termination (*Id*.). However, Lieutenant Burch was no longer allowed to supervise the complainant (*Id*.).

18.     Between January 13, 2021, and January 26, 2021, as part of Ms. Johnson's outside investigation, Ms. Johnson began contacting or attempting to contact complainants and witnesses (*Id*., ¶ 16).

19.     On January 27, 2021, Ms. Johnson drafted a Preliminary Summary Report, which contained initial results and recommendations regarding her investigation (*Id*., ¶ 17).

20.     On March 16, 2021, Ms. Johnson interviewed former Police Chief Eddie West and Lieutenant Burch (*Id*., ¶ 18).

21.     On March 18, 2021, Ms. Johnson interviewed Mr. Allen (Dkt. Nos. 36, ¶ 19).

22.     On March 23, 2021, Ms. Johnson interviewed HR Director Janice Coleman (Dkt. No. 36, ¶ 20).

23.     On March 24 and 25, 2021, Ms. Johnson attempted to interview a complainant, Lillian Blazin; however, Ms. Blazin did not appear for the scheduled interview (*Id*., ¶ 21).

24.     As part of her investigation, Ms. Johnson reviewed the following documents:  City of West Memphis Personnel Manual; West Memphis Policy and Procedure Handbook; the City's December 8, 2017, EEOC position statement regarding Charleen Hooper Lewis's Complaint; Written Statements from Ms. Hooper Lewis, Mallory Manning, Jennifer Jordan, Evelyn Brown, Lauren Dixon, Kacy Booth, Mindy Clark, Ms. Blazin, and an anonymous person; Facebook messages regarding the police department; Newspaper articles; an audio recording discussing Mr. Allen's conduct; the September 23, 2020, letter to Lieutenant Burch and Mr. Allen from HR Director Janice Coleman; the December 27, 2020, formal grievance of Lieutenant Burch; the November 24, 2020 police report of Mr. Allen; Ms. Blazin's social media posts; the July 22, 2020,

patrol clarification memo from Lieutenant Burch; and an audio recording purportedly discussing Ms. Blazin's hire (*Id.*, ¶ 22).

25.     On March 25, 2021, Ms. Johnson's investigation ended, and she issued an Addendum to the Report and Recommendations to the Preliminary Summary Report and Investigation (*Id.*, ¶ 23).

26.     Ms. Johnson gave her Preliminary Summary Report and Addendum to the City Attorney Michael Stephenson contemporaneously at the end of March 2021 (*Id.*, ¶ 24).

27.     As a result of her investigation, Ms. Johnson found,

While no allegations of quid pro quo sexual harassment were made, evidence is present that a hostile work environment based on gender was created based on the telephone interviews with police officer witnesses and dispatcher.  Based on witnesses' statements, Major Allen appears to have engaged in a pattern and practice of treating female employees in a manner that subjects them to unequal terms and conditions of employment when compared to male colleagues.

This conduct violates the dictates of the Personnel Manual of the City of West Memphis at Section 2.1 and specifically, Section 3.9 where harassment is described therein as an act which singles out any one person based on gender for 'verbal abuse, ridicule, interference with work, intentional physical contact, derogatory hints or discriminatory work assignments' is prohibited.  Moreover, this conduct . . . would be violative of the West Memphis Police Department Policy Manual, DR 133 and 134.

According to the witnesses interviewed, on more than one occasion, witnesses heard Major Allen discuss that a black woman (dispatcher) should not be married to [a] white man, that a white man could not handle a black woman, they witnessed him asking female employees who they were dating, suggest that female employees needed 'spanking.'  Allen frequently demeaned female employees and did so in the presence of other law enforcement officers[,] and there was no evidence uncovered that Allen engaged in this same conduct toward male employees.  Witnesses stated that Allen also appeared to use his supervisory ability to assign work schedules and provide discipline to employees as a means of retaliation . . . .

(*Id.*, ¶ 25).

28.     As a result of her investigation, Ms. Johnson recommended that "some action should be taken on the part of the City of West Memphis to ensure that employees feel that they

are working in a safe and not hostile working environment.  Mr. Allen should not be returned to work without the parameters as outlined above being put into place.  A performance improvement plan should be contemplated that outlines the specific job that Allen is being returned to and what the performance metrics Allen is expected to meet during a specific time frame." (*Id*., ¶ 26). Following the conclusion of Ms. Johnson's investigation, Janice Coleman drafted a Performance Improvement Plan based on Ms. Johnson's Report and Recommendations (*Id*.).

29.     On April 16, 2021, Mayor McClendon and City Attorney Stephenson met with Ms. Johnson at her office to review and discuss the Preliminary Summary Report and the Addendum (*Id*., ¶ 27).

30.     As a result of Ms. Johnson's findings, Mayor McClendon decided to discipline Mr. Allen for violating the West Memphis Police Department's Intimidation and Harassment Policies, DR 133 and 134 (*Id*., ¶ 28).

31.     On April 30, 2021, HR Director Janice Coleman, former Chief Eddie West, and Mayor McClendon met with Mr. Allen.  As a result of Ms. Johnson's findings, Mr. Allen was informed that he received a five-day suspension without pay, a 90-day probationary period under a performance improvement plan, and a substation facility change.  Additionally, Mr. Allen's supervisory authority over Dispatch, Evidence, and Records was taken away, and he received new administrative duties (*Id*., ¶ 29).

32.     The purpose for placing Mr. Allen on an Employee Performance Improvement Plan was to address two areas of concern:  (1) employee interaction/supervision with dispatchers; and (2) interpersonal skills and communication with officers (*Id*., ¶ 30).

33.     On May 3, 2021, Mr. Allen returned to work at the West Memphis Police Department and was directed to report to the Dr. King and Broadway substation (*Id*., ¶ 31).

34.     As a result of Ms. Johnson's findings, the entire West Memphis Police Department was mandated to undergo additional training on the City's personnel manual, the Police Department's Policy and Procedures Manual, and updated laws surrounding Equal Employment Opportunity with an emphasis on proper reporting structure and handling internal and external complaints (Dkt. No. 36, ¶ 32).  This training took place on May 18, 2021, and Mr. Allen attended the training (*Id*.).

35.     Former West Memphis Police Chief Eddie West was not personally involved in, nor did he directly participate in the investigation into the complaints made against Mr. Allen and Lieutenant Burch (Dkt. No. 36, ¶ 33).

36.     On May 18, 2021, Mr. Allen hand-delivered a letter to Mayor McClendon, appealing the 5-day suspension without pay and performance improvement plan.  In his letter, Mr. Allen requested a response within seven days.  However, Mr. Allen did not request an appeal hearing (*Id*., ¶ 34).

37.     The West Memphis Employee Handbook permits all employees, aside from utility employees, who receive disciplinary action to request an appeal hearing within ten days of the disciplinary action provided that a written request is made to HR (Dkt. No. 36, ¶ 35).

38.     When former Chief Pope became Chief of Police, City Attorney Stephenson explained to Chief Pope the details of the Performance Improvement Plan and that the plan must be followed (*Id*., ¶ 36).

39.     On August 2, 2021, Mr. Allen, former Chief Pope, Mayor McClendon, and HR Director Janice Coleman met for Mr. Allen's 60-day performance update under the performance improvement plan (*Id*., ¶ 37).

40.     On September 3, 2021, Mr. Allen, former Chief Pope, Mayor McClendon, and Ms. Coleman met again for Mr. Allen's 90-day final performance evaluation.  Former Chief Pope stated that Mr. Allen had fulfilled all his responsibilities outlined in the performance improvement plan, and the plan was complete (*Id*., ¶ 38).

41.     On September 22, 2021, Mr. Allen filed a Charge of Discrimination with the EEOC (hereinafter the "Charge") (Dkt. No. 34-2, at 92–94).  Mr. Allen's Charge consisted of claims of discrimination based on race, sex, and retaliation.  Specifically, Mr. Allen stated that he was "placed on administrative leave, removed from the building and my supervisory authority taken away, required to attend mandatory training on policies and procedures, moved to a substation, and suspended because of my race, Black, sex, male, color, and in retaliation for assisting another officer in filing a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. Nos. 34-2, at 93; 36, ¶ 39).

42.     On November 27, 2021, former Chief Michael Pope completed a change of status form, changing Mr. Allen's classification as Major to Grants/Certification Manager because former Chief Pope chose to eliminate the rank of Major from the West Memphis Police Department and change the structure of the department.  The only difference between Major and Grants/Certification Manager was the title.  Mr. Allen's rate of pay remained the same (*Id*., ¶ 40).

43.     On November 28, 2021, the EEOC issued Mr. Allen a Right to Sue Letter (*Id*., ¶ 41).

44.     In December 2021, interim City Police Chief Brent Bradley gave Mr. Allen a new 4 x 4 Tahoe patrol vehicle, which he still has (Dkt. No. 36, ¶ 42).

45.     On December 27, 2021, interim Chief Brent Bradley assigned Lieutenant Jason Kennedy supervisory duties over Dispatch, Evidence, and Records because no officer was

supervising these divisions.  These duties were previously assigned to Mr. Allen; however, based on the findings of Ms. Johnson's outside investigation, Mr. Allen was no longer assigned those duties (*Id.*, ¶ 43).

46.     On December 30, 2021, Mr. Allen and interim Chief Brent Bradley exchanged emails regarding Mr. Allen's job duties.  Interim Chief Brent Bradley informed Mr. Allen that he would be assigned Equipment, Fleet and Building Maintenance, and the issuance of allotments. These were the duties of someone in an administrative position, and Mr. Allen was previously assigned these duties (*Id.*, ¶ 44).

47.     On or around January 3, 2022, interim Chief Bradley informed Mr. Allen that he would keep the rank of Major since the position was never formally eliminated.  Interim Chief Bradley also informed Mr. Allen that he was welcome to move his office back to the main station, if desired (*Id.*, ¶ 45).

48.     Mr. Allen testified in his deposition that the women who filed complaints against him were the persons who discriminated against him based on his race, gender, and age.  Mr. Allen also testified that the City and West Memphis Police Department discriminated against him based on race because he was treated differently than white males (*Id.*, ¶ 46).

49.     Mr. Allen testified in his deposition that the following employees are similarly situated to him:  (1) Lieutenant Burch, who oversees patrol officers and reports to Captain Presley and Assistant Chief Robert Langston; (2) Officer Hightower, who works in patrol and reports to Lieutenant Gardner; (3) Captain Johnson, who oversees IT and grants, was a disciplinary review officer, reports to Chief Michael Pope, and was terminated; and (4) Sergeant Gregory, who supervises the training division, reports to Captain Presley, and quit his employment before any disciplinary action took place (*Id.*, ¶ 47).

50.     Mr. Allen testified in his deposition that his coworkers as a whole created a hostile work environment and harassed him because "there was always chitter chatter [and complaints] about [him] in the building." (*Id.*, ¶ 48).

51.     Mr. Allen testified in his deposition that he never filed a report of discrimination, retaliation, or harassment.  Mr. Allen only filed an internal affairs complaint against a coworker, Jennifer Jordan (*Id.*, ¶ 49).

52.     Mr. Allen testified that he complained to interim Chief Brent Bradley about feeling uncomfortable around Joel Johnson because Joel Johnson was involved in gathering the complaints filed against Mr. Allen (*Id.*, ¶ 50).

53.     Mr. Allen testified in his deposition that he believes his co-workers, not any of the Defendants, retaliated against him over fear of him becoming Assistant Chief.  Mr. Allen also testified that he believes he was retaliated against when he was suspended and required to complete the performance improvement plan "because the investigation was unfounded." (*Id.*, ¶ 51).

54.     Upon request, Mayor McClendon conducted a review of the City records to determine if the City had an insurance policy that would provide coverage for any alleged injuries listed in this case.  Mayor McClendon concluded his review and found that the City did not maintain any policy of liability insurance (Dkt. No. 36, ¶ 54).

## IV.     Motions For Summary Judgment And Judgment Without A Hearing

### A.     Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the

defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment, '[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## B.  Timeliness Of Mr. Allen's EEOC Charge

Defendants assert that Mr. Allen's Title VII claims are untimely and that he did not exhaust any claims that accrued prior to May 26, 2021 (Dkt. No. 35, at 6). Title VII requires that charges

first be filed with the EEOC within 180 days of when the unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e)(1) (stating that, under Title VII, EEOC charge must be filed within 180 days of when alleged unlawful employment practice occurred; 300–day filing period applies if person initially instituted state or local agency proceedings); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–110 (2002) (explaining that a timely EEOC charge is mandatory). Further, even if a plaintiff files a timely charge, that plaintiff must also exhaust his remedies by giving notice of all claims of discrimination in the EEOC charge. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000). Claims outside the scope of the EEOC charge circumvent the EEOC's investigative and conciliatory process and fail to provide the charged party with notice. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Mr. Allen states in his EEOC charge that the discrimination and retaliation took place when he was placed on administrative leave on September 23, 2020, pending an outside investigation into the complaints made against him, and when he was disciplined as a result of the findings of the investigation on May 3, 2021. Mr. Allen states, "I believe I was placed on administrative leave, removed from the building and my supervisory authority taken away, required to attend mandatory training on policies and procedures, moved to a substation, and suspended because of my race, Black, sex, male, color, and in retaliation for assisting another officer in filing a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. No. 34-2, at 93). The mandatory training for the West Memphis Police Department occurred on May 18, 2021 (Dkt. No. 36, ¶ 32).

Defendants assert as part of their timeliness argument that "Major Allen filed his EEOC Charge on November 22, 2021." (Dkt. No. 35, at 6). Defendants cite their statement of undisputed

material facts at paragraph 39 as support for this proposition (*Id.*).  Defendants' statement of undisputed material facts at paragraph 39, however, correctly states that Mr. Allen filed his EEOC Charge on *September 22, 2021* (Dkt. No. 36, ¶ 39 (citing Dkt. No. 34-2, at 92-95)).  As a result of Defendants' error, Defendants incorrectly calculate 180 days before the filing of the EEOC Charge as May 26, 2021, when it should be March 26, 2021, based on the filing of the Charge on September 22, 2021.  Because Mr. Allen alleges that the discrimination and retaliation took place after March 26, 2021, Mr. Allen timely filed his EEOC Charge, and he is not precluded from bringing his claims under Title VII.  *See* 42 U.S.C. § 2000e–5(e).

### C.   Individual Defendant Liability Under Title VII

Defendants argue that individual liability does not attach under Title VII and that the Court must dismiss the claims against the individual Defendants (Dkt. No. 35, at 6–7).  Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . ."  42 U.S.C. § 2000e(b).  "[T]he obvious purpose of th[e] agent provision [of § 2000e(b)] was to incorporate respondeat superior liability into the statute."  *Grissom v. Waterloo Indus.*, 902 F. Supp. 867, 870 (E.D. Ark. 1995) (alterations in original) (citation omitted).  The Eighth Circuit has consistently held that supervisors may not be held individually liable under Title VII.  *Griffin v. Webb*, 653 F. Supp. 2d 925, 933 (E.D. Ark. 2009) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 931 (8th Cir. 2007) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000))).  Additionally, "co-workers may not be held individually liable under Title VII."  *Grissom*, 902 F. Supp. at 869 (citing *Smith v. St. Bernards Regional Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Flowers v. Rego,* 691 F. Supp. 177, 178–79 (E.D. Ark. 1988)).  Thus, "if a Title VII plaintiff names his or her

employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action." *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000).

Accordingly, to the extent that Mr. Allen has raised in his complaint Title VII claims against the individual Defendants instead of his employer, the Court dismisses without prejudice Mr. Allen's Title VII claims against the individual Defendants.

### D.     Race And Gender Discrimination

#### 1.     Legal Standard

Mr. Allen can establish a *prima facie* claim of discrimination under Title VII either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson*, 643 F.3d at 1044 (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

Under the *McDonnell Douglas* analysis, the elements of a *prima facie* discrimination claim are that:  (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to

an inference of discrimination, *e.g.*, he was treated differently than similarly situated employees who were not members of his protected class.  *Jones*, 825 F.3d at 480 (citations omitted).  Once an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the employee to show that the employer's reason was pretextual.  *Hesse v. Avis Rent A Car System, Inc.*, 394 F.3d 624, 631 (8th Cir. 2005).

### 2.      Analysis Of Race Discrimination

#### a.      *Prima Facie* Case

Mr. Allen asserts that he was discriminated against based on race because he was treated differently than Lieutenant Burch, who is a white male and who was being investigated for the same policy violations as Mr. Allen.  Here, the parties do not dispute that Mr. Allen has not presented direct evidence of race discrimination.  Therefore, the Court will analyze Mr. Allen's race discrimination claim under the *McDonnel Douglas* burden-shifting framework.

Defendants contend that Mr. Allen's race discrimination claim fails as a matter of law because he is unable to establish a *prima facie* case of discrimination under Title VII (Dkt. No. 35, at 8).  Defendants concede that Mr. Allen is a member of a protected class based on his race, but Defendants maintain that Mr. Allen cannot show that he met the City's legitimate expectations, suffered an adverse employment action, or that the circumstances give rise to an inference of discrimination (*Id.*).  In his motion for decision without a hearing, Mr. Allen contends that he has made out a *prima facie* case of race discrimination because he was treated differently than other similarly situated individuals, specifically Lieutenant Burch, who was a white officer who was investigated for violating the same department policies (Dkt. No. 39-6, at 7–10).  The Court will discuss each disputed element of the *prima facie* case in turn.  The Court concludes that, based on

the record evidence with all reasonable inferences from that evidence viewed in favor of Mr. Allen,

Mr. Allen is unable to establish a *prima facie* case because he is unable to establish each of the

elements required.

### i.      Legitimate Expectations

Defendants contend that Mr. Allen is unable to show that he met the City's legitimate

expectations (Dkt. No. 35, at 9–10, 17).  According to Defendants, Mayor McClendon's decision

to discipline Mr. Allen was based on the findings of Ms. Johnson's outside investigation (Dkt. No.

34-1, at 97, ¶ 11).  In her report, Ms. Johnson found:

> While no allegations of *quid pro quo* sexual harassment were made, evidence is
> present that a hostile work environment based on gender was created based on the
> telephone interviews with police officer witnesses and dispatchers.  Based on
> witnesses' statements, Major Allen appears to have engaged in a pattern and
> practice of treating female employees in a manner that subjects them to unequal
> terms and conditions of employment when compared to male colleagues.
>
> This conduct would be violative of the dictates of the Personnel Manual of the City
> of West Memphis at Section 2.1 and specifically, Section 3.9 where harassment is
> described therein as an act which singles out any one person based on gender for
> 'verbal abuse, ridicule, interference with work, intentional physical contact,
> derogatory hints or discriminatory work assignments' is prohibited.  Moreover, the
> conduct as described would be violative of the West Memphis Police Department
> Policy Manual, DR 133 and 134.
>
> According to the witnesses interviewed, on more than one occasion, witnesses
> heard Major Allen discuss that a black woman (dispatcher) should not be married
> to [a] white man, that a white man could not handle a black woman, they witnessed
> him asking female employees who they were dating, suggest that female employees
> needed 'spanking.'  Allen frequently demeaned female employees and did so in the
> presence of other law enforcement officers[,] and there was no evidence uncovered
> that Allen engaged in this same conduct toward male employees.  Witnesses stated
> that Allen also appeared to use his supervisory ability to assign work schedules and
> provide discipline to employees as a means of retaliation, witnesses corroborated.

(Dkt. No. 36, ¶ 25).  Ms. Johnson found that Mr. Allen's conduct created a hostile work

environment for those who filed complaints against Mr. Allen and that Mr. Allen violated two

provisions of the City's Police Department Policy Manual related to intimidation and harassment (*Id*.).

After the investigation and based on a review of Mr. Allen's performance, the City "determined that [Mr. Allen's] performance [was] below the acceptable standards expected of a Major with the Department." (Dkt. No. 34-2, at 13). The City implemented an Employee Performance Improvement Plan that included a five-day suspension without pay, new administrative duties, no supervisory duties over dispatch, and temporary relocation of Mr. Allen's office (Dkt. No. 36, ¶ 29). Based on Ms. Johnson's findings, all the City's Police Department employees were required to attend training (Dkt. No. 36, ¶ 32).

Mr. Allen asserts that he was meeting legitimate expectations by challenging the findings in Ms. Johnson's report. Mr. Allen contends that the allegations in the report were not substantiated by the statements provided by his accusers and maintains that his performance is not at issue in this case (Dkt. Nos. 39-6, at 8; 46, at 1–2, 4). Mr. Allen criticizes the City's investigation of the complaints against him. For example, Mr. Allen challenges the fact that Ms. Johnson considered the 2017 statement of Charlene Hooper Lewis as part of her investigation, when the City defended him against Ms. Hooper Lewis's 2017 EEOC complaint (Dkt. No. 39-6, at 8–9). Mr. Allen also claims that Mayor McClendon directed Ms. Johnson's investigation because she told Mr. Allen that Mayor McClendon asked her to interview him (Dkt. No. 39-6, at 9).

Additionally, Mr. Allen makes much of the fact that the City had never hired an outside investigator before hiring Ms. Johnson to conduct his investigation (*Id*.). Mr. Allen asserts that because of this fact, the "investigation was not carried out pursuant to the West Memphis Police Department Policy and Procedure Manual." (Dkt. No. 46, at 5). It is uncontested, however, that the City's internal affairs policy is silent on the issue of hiring an outside investigator and that the

City Council, at the request of the Mayor, approved the hiring of an outside investigator in this instance (Dkt. No. 36, ¶ 9).  Further, it is uncontested that a Discipline Review Officer under the City's Police Department policy at Paragraph (H)(1) was not the proper officer to oversee review of complaints against Mr. Allen at this stage because Mr. Allen was not subject to a disciplinary action imposed by a "Department supervisor" or "Division commander" as set forth in the policy (Dkt. No. 34-1, at 88, 97).

Mr. Allen also contends that he met legitimate expectations based on his performance record because he had "only one infraction since 2007[,] and the infraction was not like the allegations that are the subject of this complaint" (Dkt. No. 46, at 4).   Mr. Allen's statement regarding his prior disciplinary record disregards Ms. Johnson's finding that Mr. Allen violated two provisions of the City's Police Department Policy Manual related to intimidation and harassment (Dkt. Nos. 34-1, at 68; 34-2, at 13).  *Cherry v. Ritenour School Dist.*, 253 F. Supp.2d 1085, 1095 (E.D. Mo. 2003) (quoting *Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343 (8th Cir. 1997) ("Showing that she met expectations in previous positions or at some time prior to the adverse employment action is inadequate to meet Plaintiff's burden" to establish the second element of a *prima facie* case of racial discrimination)).

The Court determines that a reasonable jury could conclude, based on the record evidence before it with all reasonable inferences from that record evidence construed in favor of Mr. Allen, that Mr. Allen was not meeting the City's legitimate expectations.  As a result, because Mr. Allen is unable to establish this required element, he is unable to establish a *prima facie* case.

### ii.   Adverse Employment Action

Defendants also argue that Mr. Allen cannot establish that he suffered an adverse employment action.   The Court agrees with Defendants that almost all the actions cited by

Defendants do not rise to the level of an "adverse employment action" for purposes of Title VII–including placement on administrative leave, relocation to a substation, and reassignment to new duties.  *See Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005) ("We . . . hold that Singletary did not suffer an adverse employment action by being placed on administrative leave."); *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1078 (8th Cir. 2010) (determining that office relocation is not materially adverse employment action because it is the kind of annoyance or petty slight that we have held does not constitute actionable harm); *Muldrow v. City of St. Louis Missouri*, 30 F.4th 680, 688–89 (8th Cir. 2022) ("This Court has repeatedly found that an employee's reassignment, absent proof of harm resulting from that reassignment, is insufficient to constitute an adverse employment action."); *see also Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005).

Here, however, Mr. Allen was also suspended without pay for five days.  The Court concludes, based on the record evidence before it with all reasonable inferences from that evidence construed in favor of Mr. Allen, that a jury may conclude that Mr. Allen's suspension without pay for five days was an "adverse employment action" for purposes of Title VII.  *See McClure v. Career Sys. Dev. Corp.,* 447 F.3d 1133, 1137 (8th Cir. 2006); *see also Williams v. Pulaski Cnty. Special Sch. Dist.*, Case No. 4:10-cv-01143 JLH, 2011 WL 2456847, at *4 (E.D. Ark. May 24, 2011) (concluding that suspension of substitute teacher without pay would likely constitute an adverse employment action (citing *McClure v. Career Sys. Dev. Corp.,* 447 F.3d 1133, 1137 (8th Cir. 2006)); *see also Hervey v. Cnty. of Koochiching*, Case No. CIV. 04-4537PJSRLE, 2006 WL 2990515, at *11 (D. Minn. Oct. 20, 2006), *aff'd and remanded,* 527 F.3d 711 (8th Cir. 2008) (citing *McClure v. Career Sys. Dev. Corp.,* 447 F.3d 1133, 1137 (8th Cir. 2006); *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 802 (6th Cir. 2004), *aff'd,* 548 U.S. 53 (2006)).

### iii.       Inference Of Discrimination

Defendants also argue that Mr. Allen is unable to demonstrate that he was treated differently than a similarly situated employee to establish an inference of race discrimination.  "[A] plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010)).  The Eighth Circuit has set a "'low threshold' for employees to be considered similarly situated" at the *prima facie* stage, "requiring only that the employees 'are involved in or accused of the same or similar conduct and are disciplined in different ways.'"  *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1063 (W.D. Ark. 2017) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005)).

Mr. Allen claims to have been treated differently during the disciplinary process from Lieutenant Burch (Dkt. No. 39-6, at 7–8).  Mr. Allen asserts that the City relieved both officers from duty on the same day "for allegedly violating the West Memphis, Arkansas Police Department's Disciplinary Regulations 133 and 134 for Intimidation and Harassment" (*Id.*, at 7–8).  Mr. Allen argues that, despite both officers being relieved of duty for complaints of intimidation and harassment, the white officer, Lieutenant Burch, was not subject to an outside investigation and was returned to duty by Mayor McClendon "without the benefit of an investigation" on December 29, 2020, while he was subject to an outside investigation, was not returned to duty until May 3, 2021, and was suspended without pay for five days (*Id.*, at 8).

Considering the record evidence before the Court in the light most favorable to Mr. Allen, the Court determines that, under the low threshold applicable at the *prima facie* stage, Mr. Allen

has established that he was treated differently than Lieutenant Burch to establish an inference of race discrimination because Mr. Allen and Lieutenant Burch were accused of similar conduct—violating the City Police Department Rules and Regulations regarding intimidation and harassment—and were disciplined differently and because Lieutenant Burch was subject to an internal investigation and returned to duty weeks later, while Mr. Allen was subject to an external investigation, was returned to duty with a different job assignment several months later, and received a five-day suspension without pay.

### b.    Pretext

Even if Mr. Allen could make out a *prima facie* case of race discrimination, Mr. Allen has not demonstrated on the record before the Court a genuine issue of material fact that the City's legitimate, nondiscriminatory reason for terminating him was pretext for race discrimination.

The City's burden to demonstrate that it suspended Mr. Allen for a legitimate, nondiscriminatory reason "is not onerous." *Bone,* 686 F.3d at 954.  Here, the City has provided a legitimate, nondiscriminatory reason for suspending Mr. Allen for five days without pay because it determined, after an independent investigation, that he violated the City Police Department's intimidation and harassment policies.  The Court determines that the City has met its burden to establish that it suspended Mr. Allen without pay for a legitimate, non-discriminatory reason.

The Court next examines whether Mr. Allen has met his burden of demonstrating a material question of fact as to pretext.  "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson,* 643 F.3d at 1047.  First, "[a] plaintiff may show that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact.' *Id.* Alternatively, a plaintiff may show pretext 'by persuading the court that a [prohibited] reason more likely motivated the employer.'" *Id.* (citations omitted).  In this sense, Mr. Allen's burden of

establishing pretext would merge "with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Id.* at 1046 (citation omitted).

"At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956 (quoting *Rodgers*, 417 F.3d at 853). To succeed at the more rigorous pretext stage, Mr. Allen must show that he and the potential comparators he identifies were "similarly situated in all relevant respects." *Id.* (quoting *Rodgers*, 417 F.3d at 853). The comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). Although the standard for determining whether employees are similarly situated is rigorous at the pretext stage, the Eighth Circuit does not require the plaintiff to produce evidence of "a clone." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013). Instead, to be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness. *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1230–31 (8th Cir. 2013).

Defendants argue that Mr. Allen and Lieutenant Burch are not similarly situated in all relevant respects in order to be comparators under the more rigorous standard (Dkt. No. 35, at 15).[3] Defendants point out that Mr. Allen oversaw Dispatch, Evidence, and Records and that his direct supervisors were Assistant Chief Langston and Former Chief West (*Id.*). Lieutenant Burch, on the

---

[3] During his deposition, Mr. Allen claims to have been treated differently than Officer Mark Hightown, Captain Joel Johnson, and Sergeant Hayes Gregory. Defendants explain in their brief supporting their motion for summary judgment how, based on evidence in the record, none of these individuals are similarly situated to Mr. Allen (Dkt. No. 35, at 15). Mr. Allen does not pursue these individuals as comparators in his motion for judgment without a hearing, and the Court agrees with Defendants' assessment based on the record evidence before the Court that these individuals are not proper comparators (Dkt. Nos. 35, at 15, 39-6). Accordingly, the Court does not further examine these individuals as comparators in its Order.

other hand, oversaw patrol officers, and his direct supervisors were Captain Presley and Assistant Chief Langston (*Id.*).  On the record evidence before the Court, however, Mr. Allen and Lieutenant Burch shared a supervisor, Assistant Chief Langston, who, according to Ms. Johnson's report, participated with HR in placing both officers on administrative leave with pay on September 23, 2020, because of complaints against them (Dkt. No. 39-6, at 53).[4]  Additionally, both Mr. Allen and Lieutenant Burch were subject to West Memphis Police Department policies regarding intimidation and harassment.

To be probative evidence of pretext, however, Mr. Allen must establish that the misconduct of Lieutenant Burch is of comparable seriousness.  *Burton*, 737 F.3d at 1230–31.  On the record before the Court, the Court determines that, viewing the evidence in the light most favorable to Mr. Allen, a reasonable fact finder could not conclude that Mr. Allen has provided sufficient evidence for the Court to conclude that Lieutenant Burch's conduct was of comparable seriousness in order to be a sufficient comparator under the rigorous standard.  *Ridout*, 716 F.3d at 1085 ("While no employee is a precise clone of another . . . the probative value of comparator evidence will be greatest when the circumstances faced by the putative comparators are most similar to the plaintiff's.").  While Mr. Allen and Lieutenant Burch were both placed on administrative leave with pay pending an investigation into allegations of violating the same policies, Mr. Allen had approximately eight complaints filed against him.  Lieutenant Burch had fewer complaints filed against him.  The complaints against Lieutenant Burch were less serious in nature, and only one complaint was filed by someone he directly supervised.

---

[4] In responses to requests for production of documents attached to Mr. Allen's motion for judgment without a hearing, Defendants state that "Mayor McClendon made the decision to place Stacy Allen on administrative leave with pay while an outside investigation was conducted into complaints made against Stacy Allen." (Dkt. No. 39-6, at 23).  This is contrary to what is in Ms. Johnson's report.

Ms. Johnson's supplemental report mentions the disparity. Ms. Johnson references that HR received a complaint against Lieutenant Burch involving his professional conduct and the department's policies involving harassment and intimidation (Dkt. No. 34-1, at 112). Later in her supplemental report, Ms. Johnson writes:

> Both Allen and Burch discussed finding performance difficulties with Lillian Blazin as an officer with the W[est] M[emphis] P[olice] D[epartment]. They reported that Blazin, had a significant accident in a WMPD patrol car which she did not initially report, Blazin had been repeatedly disciplined about her use of social media while in uniform and on the clock. Blazin's written statement was used for the investigative summary where in [sic] she acknowledged her use of social media being problematic for the WMPD. Other than having to suggest discipline for Blazin, Burch has no authority to hire or fire and had no part in Blazin being hired with the Department. Blazin['s] statements regarding Lt. Burch were not corroborated by this investigator.

(Dkt. No. 34-1, at 114).

Mayor McClendon testifies in his affidavit in support of Defendants' motion for summary judgment, "I chose to investigate the complaint against Lt. Burch because it was one complaint, and I believed I could address the situation myself." (Dkt. No. 34-1, at 96, ¶ 7). Further, Mayor McClendon states in his affidavit that, after his investigation, he determined that there was insufficient evidence to proceed with suspension or termination of Lieutenant Burch (Dkt. Nos. 34-1, at 96, ¶ 9; 39-6, at 111).

In his response to Defendants' motion for summary judgment, Mr. Allen objects to Defendants asserting that there was only "one" complaint filed against Lieutenant Burch—noting that both Jennifer Jordan,[5] one of the same officers who complained about Mr. Allen, and Lillian

---

[5] The Court notes that Sergeant Jordan filed written complaints against both Mr. Allen and Lieutenant Burch. Lieutenant Burch was not Sergeant Jordan's supervisor in June 2018 or July and August 2020 (Dkt. No. 34-1, at 127-28). Sergeant Jordan complained that she was uncomfortable when she was forced to discuss a matter of a sexual nature while at Lieutenant Burch's house by herself (Dkt. No. 34-1, at 127). Sergeant Jordan also complained that Lieutenant Burch called a meeting with supervisors in which Lieutenant Burch stated that he was "looking to

Blazin complained about Lieutenant Burch (Dkt. No. 46, at 1).[6]  Mr. Allen also points out that, when it was reported to employees that Lieutenant Burch might return to work at the main location of the police department, employees expressed concern about not knowing when Lieutenant Burch may return (Dkt. No. 46, at 2).

Ms. Johnson's addendum to her report and recommendations notes that Lieutenant Burch returned to full duty as of December 28, 2020, at a satellite location described as the "range" and advises that witnesses should have been notified about the status of the internal investigation before Lieutenant Burch returned from suspension (Dkt. Nos. 34-1, at 114-115; 39-6, at 111). Additionally, Ms. Johnson also notes in her addendum that she had interviewed Lieutenant Burch and that he denied allegations that he refused to let officers eat at the police station, that the allegations were not corroborated, and that he was not allowed to "promote, suspend or demote" employees because that was not within his job duties as a lieutenant (Dkt. No. 34-1, at 115).

Ms. Johnson noted that the allegations against Mr. Allen, on the other hand, were of sexual harassment and gender discrimination against dispatchers and female law enforcement officers and retaliation against both types of employees for engaging in protected activity (Dkt. No. 34-1, at 113).  Ms. Johnson's interviews substantiated complaints of both sexual harassment and gender

---

suspend and demote supervisors" and that officers were no longer permitted to eat their meals inside of the police station (*Id*., at 128).

[6]  The Court notes that included in the record is a letter from Kacy L. Booth complaining that Lieutenant Burch, while filling in for her direct supervisor, reported to her supervisor that she was not doing a good job (Dkt. No. 34-1, at 142).  Also included in Ms. Booth's letter is a complaint that, upon handing in her resignation letter to Lieutenant Burch on August 6, 2020, he told her that he did not accept her notice and that she was not welcome back to serve her two weeks (*Id*., at 142).  Ms. Booth also complains that Lieutenant Burch falsely reported to the Chief and Assistant Chief that she was bad mouthing the department after handing in her resignation, and Lieutenant Burch contacted her new Chief and advised him that he made a mistake in hiring Ms. Booth (Dkt. No. 34-1, at 142–43).  Ms. Booth writes that she spoke with Chief Langston following the incident and "felt insured that I was covered and could be rehired in the future." (*Id*., at 142).

discrimination, including longstanding harassment that dated back in time to 2017 or earlier (*Id*.). Additionally, Ms. Johnson noted that witnesses were concerned about retaliatory conduct by Mr. Allen if they dared to file a complaint against Mr. Allen (*Id*., at 114).

For the reasons discussed in this Order, based on the record evidence before the Court viewed in the light most favorable to Mr. Allen, the Court finds that Mr. Allen fails to demonstrate pretext.  Mr. Allen has not presented sufficient evidence from which a jury could find that the seriousness of the many complaints against Mr. Allen, which date back to 2017 and which were investigated and found substantiated by Ms. Johnson, and the complaints against Lieutenant Burch, which were investigated by Mayor McClendon, found to be unsupported, and noted by Ms. Johnson in her report, were sufficiently similar in order to demonstrate that Mr. Allen's suspension without pay was a pretext for race discrimination.  *See Bone,* 686 F.3d at 956 (determining whether employees are similarly situated at the pretext stage "is a rigorous" test, and comparators must have engaged in "the same conduct without any mitigating or distinguishing circumstances.").

Finally, the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for disciplining an employee.  "A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus."  *Roeben v. BG Excelsior Ltd. Partnership,* 545 F.3d 639, 643 (8th Cir. 2008) (internal quotation marks and citation omitted).  Mr. Allen has not come forward with any evidence of discriminatory animus on the part of the City.

Mr. Allen also attempts to survive summary judgment by challenging the investigation that led to the City's decision to suspend him.  *See Torgerson,* 643 F.3d at 1047.  Mr. Allen argues that, during Ms. Johnson's investigation into the allegations made against him, he was denied the opportunity to confront the allegations, and he was only interviewed two months after Ms. Johnson

rendered her initial findings (Dkt. No. 39-6, at 8). Mr. Allen also maintains that the allegations made against him "were not substantiated by any of the statements provided by his accusers." (*Id.*).

Mr. Allen points out that Ms. Johnson considered the City's response to an EEOC Charge of discrimination made by Ms. Hooper Lewis, when the City had defended him when Ms. Hooper Lewis brought the EEOC charge against him in 2017 (*Id.*). Mr. Allen asserts that, because Ms. Hooper Lewis's allegations were investigated and closed by the EEOC, any allegations by Ms. Hooper Lewis should not have been considered six years later (*Id.*). Mr. Allen also complains that Mayor McClendon was directing Ms. Johnson's investigation because he asked Ms. Johnson to interview Mr. Allen, and Mr. Allen further complains because he maintains that the City had never used an outside investigator (*Id.*, at 9). Finally, Mr. Allen asserts that correspondence between City Attorney Stephenson and Mayor McClendon on June 23, 2021, following a meeting with former Chief Pope, indicates that Mayor McClendon thought that "anything different that happens" at the station "will be thrown on [Mr. Allen] regardless of the matter but [Mayor McClendon is] going to make sure the recommendations [in Johnson's report] are followed so there won[']t be any speculations of a influence." (Dkt. Nos. 39-6, at 9 78).

The critical inquiry for the Court at the pretext stage is "not whether the employee actually engaged in the conduct" for which he was disciplined but "whether the employer in good faith believed that the employee was guilty of the conduct" justifying the disciplinary action taken. *Scroggin v. Univ. of Minnesota,* 221 F.3d 1042, 1045 (8th Cir. 2000) (citing *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994)) (case involving employee discharge). Viewing the record evidence in the light most favorable to Mr. Allen, no reasonable fact finder could conclude that the City did not in good faith believe that Mr. Allen engaged in the conduct for which it suspended him without pay for five days based on Ms. Johnson's report.

### c.      Conclusion

After reviewing all of the evidence and arguments of the parties, the Court grants Defendants' motion for summary judgment on Mr. Allen's claim of race discrimination under Title VII (Dkt. No. 34) and denies Mr. Allen's amended motion for decision without a hearing on his claim of race discrimination (Dkt. No. 39-6).  Mr. Allen has not made out a *prima facie* case of race discrimination because the Court determines that a reasonable jury could not conclude, based on the record evidence before the Court viewed in Mr. Allen's favor, that Mr. Allen was meeting the City's legitimate expectations.  Even if Mr. Allen could make out a *prima facie* case of discrimination, Mr. Allen has not demonstrated on the record evidence a disputed genuine issue of material fact regarding whether the City's legitimate, nondiscriminatory reason for suspending him was pretext for race discrimination.

### 3.      Analysis Of Gender Discrimination

Mr. Allen has not come forward with direct evidence of gender discrimination.  At his deposition, Mr. Allen testified that female dispatchers and officers—not any of the Defendants—discriminated against him by filing complaints against him because they wanted a female supervisor over dispatch (Dkt. No. 36, ¶ 46).

After reviewing all of the record evidence and parties' arguments, the Court concludes that Defendants are entitled to summary judgment on Mr. Allen's claim of gender discrimination under Title VII.  As set forth above, even if Mr. Allen can demonstrate that he is a member of a protected class, he is unable to demonstrate that he was meeting the City's legitimate expectations because the record evidence demonstrates that complaints against Mr. Allen were substantiated by an outside investigation and because the City found that Mr. Allen's "work performance [was] below the acceptable standards expected of a Major with the Department."  (Dkt. No. 39-6, at 59).

Additionally, nothing in the record evidence before the Court indicates that a jury could find evidence of pretext for gender discrimination.  Numerous complaints were lodged against Mr. Allen by female dispatchers and officers based on intimidation and harassment, and based on Ms. Johnson's findings of her investigation, the complaints were corroborated and corrective action against Mr. Allen was warranted (Dkt. No. 35, ¶ 6, 25–26).  When Mr. Allen was removed from his supervisory duties over dispatch, Mr. Allen was replaced by another male, Lieutenant Jason Kennedy (Dkt. No. 36, ¶ 43).  Mr. Allen has not come forward with a female comparator whose violations were of comparable seriousness.  *See Fatemi v. White*, 775 F.3d 1022, 1042 (8th Cir. 2015).  Additionally, Mr. Allen has not come forward with any evidence of discriminatory animus based on his gender on the part of the City.  *See Roeben,* 545 F.3d at 643.

After reviewing all the record evidence and parties' arguments, the Court grants Defendants summary judgment on Mr. Allen's claim of gender discrimination under Title VII (Dkt. No. 34) and denies Mr. Allen's amended motion for decision without a hearing on his claim of gender discrimination (Dkt. No. 39-6).  Mr. Allen has not made out a *prima facie* case of gender discrimination because the Court determines that a reasonable jury could not conclude based on the record before it that Mr. Allen was meeting the City's legitimate expectations.  Even if Mr. Allen could make out a *prima facie* case of discrimination, Mr. Allen has not demonstrated on this record a genuine issue of material fact that the City's legitimate, nondiscriminatory reason for suspending him was pretext for gender discrimination.

### 4.        Analysis Of Hostile Work Environment

To establish a *prima facie* case of hostile work environment harassment, Mr. Allen must show:  (1) that he is a member of a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership in the protected group; and (4)

that the harassment affected a term, condition, or privilege of his employment. *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014). He must also demonstrate that a supervisor caused the harassment. *See Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). In the alternative, if his hostile work environment claim is based on harassment by someone other than his supervisor, such as a co-worker or customer, he must also prove that the employer "knew or should have known of the harassment and failed to take prompt and effective remedial action." *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018).

Even if Mr. Allen could meet the first three elements of the *prima facie* case, to establish the fourth element, Mr. Allen must demonstrate that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment" and that he subjectively believed that his working conditions had been altered. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Harassment "standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant." *Alagna v. Smithville R–II Sch. Dist.,* 324 F.3d 975, 980 (8th Cir. 2003)). More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment. *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir. 1999). Mr. Allen must prove that the workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris,* 510 U.S. at 21. Courts consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. *Baker v. John Morrell & Co.,* 382 F.3d 816, 828 (8th Cir. 2004). For example, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

In his amended motion for decision without a hearing, Mr. Allen argues in support of his hostile work environment claim that "[t]he events giving rise to this complaint have interfered with Plaintiff's ability to perform his job.  The hostility directed towards Plaintiff has been ongoing and continuous." (Dkt. No. 39-6, at 12).  Mr. Allen states that he has "not been assigned any additional duties" since returning to work (*Id.*).

The Court has examined all of the record evidence.  Construing the record evidence in the light most favorable to Mr. Allen, he was not able to name anyone specifically that created a hostile work environment for him but alleged that co-workers created the environment with "chitter chatter [and complaints] about [him] being in the building." (Dkt. No. 36, ¶ 48).  Mr. Allen seems to indicate that he is being harassed by his co-workers who continue to complain about him to his superiors and that this creates a work environment that is "hostile and toxic and hampers his ability to perform his job and further progress through the ranks at the West Memphis Police Department." (Dkt. No. 1, at 10).  Based on the record before it, Mr. Allen has not come forward with hostile comments or actions from either superiors or co-workers that the Court can determine are based on race or sex.

The Court determines that, considering the record evidence in the light most favorable to Mr. Allen, he fails to meet the high bar of establishing a hostile work environment sufficient to defeat Defendants' motion for summary judgment on his hostile work environment claim. Compared to other cases in which the Eighth Circuit Court of Appeals has found the alleged harassing conduct did not constitute race or gender discrimination, this Court determines that the harassment Mr. Allen alleges in this case does not create an actionable hostile work environment claim based on either race or sex.  *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment,"

and "complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" are insufficient.); *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79–80 (1998) (concluding that Title VII does not prohibit all verbal or physical harassment in workplace; plaintiff must show conduct was not merely tinged with offensive sexual connotations, but actually constituted "discrimination because of sex"); *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 824 (8th Cir. 2003) (determining, in affirming summary judgment in hostile work environment case, that court could not conclude that harassment was "based on sex" when plaintiff offered no evidence that co-worker's motivation for backhand in the scrotum was motivated by a hostility towards men); *Tademe v. Saint Cloud State Univ.,* 328 F.3d 982, 991 (8th Cir. 2003) (quoting *Bradley v. Widnall,* 232 F.3d 626, 631 (8th Cir. 2000) ("[h]ostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult'. . . ."); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002) (finding defendant was entitled to judgment as a matter of law because harassment was not severe and pervasive in order to create a hostile work environment in workplace where the plaintiff complained about a co-worker who, over a two-year period, requested a relationship with her; briefly touched her hand on four or five occasions; asked her to use his computer, which had a picture of a naked woman as the screen saver; asked the plaintiff to draw his planter, which had a hole in the front of a man's pants that allowed a cactus to protrude; and kept a child's pacifier that was shaped like a penis in his office that he showed to the plaintiff on two occasions); *see also Singletary*, 423 F.3d at 893 (finding job environment where the plaintiff had second-hand knowledge his co-workers and some managers referred to him as a "nigger" and where his vehicle had been vandalized on several occasions was not objectively severe and pervasive); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)

(finding racial remarks, made directly to plaintiff, once a month for two years by owner and operators, was insufficient to render the workplace objectively hostile); *Miles v. BG Excelsior Ltd. P'ship*, Case No. 4:08-cv-02801 SWW, 2011 WL 124300, *6 (E.D. Ark. Jan. 14, 2011) (finding that "hot mess" comment and alleged nagging insufficient to support race-based hostile work environment claim because "for conduct to be considered in a race-based hostile work environment claim, the conduct must 'have a racial character. . . .'" (citation omitted)).

Further, the Court finds that Mr. Allen has not established that the City knew of the hostile work environment he asserts in his complaint and failed to take proper remedial action. Mr. Allen testified that he never filed a report of discrimination, retaliation, or harassment, only an internal affairs complaint against co-worker Jennifer Jordan (Dkt. No. 36, ¶ 49). Consequently, Mr. Allen has not come forward with record evidence that he reported race or gender-based harassment to his supervisor or to HR and that the City failed to act. Further, after Ms. Johnson's independent investigation, the City took steps to remove Mr. Allen as supervisor of the dispatchers and from the office building in which the dispatchers and complaining officers were located. "If an employer responds to harassment with prompt remedial action calculated to end it, then the employer is not liable for the harassment." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010).

Viewing the record evidence in favor of Mr. Allen, nothing in the record permits a reasonable inference of severe and pervasive harassment about which Defendants knew and failed to take proper remedial action, and the Court determines that no reasonable fact finder could find in favor of Mr. Allen on his hostile work environment claim. Accordingly, the Court grants Defendants' motion for summary judgment (Dkt. No. 34) and denies Mr. Allen's amended motion for decision without a hearing on Mr. Allen's hostile work environment claim (Dkt. No. 39-6).

### 5.      Analysis Of Mr. Allen's Retaliation Claim

Under Title VII, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).

To establish a *prima facie* case of retaliation under Title VII, Mr. Allen must show:  (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection existed between the protected activity and the adverse action.  *Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 955 (8th Cir. 2011).  "Retaliation must be the 'but for' cause of the adverse employment action."  *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (internal revisions, quotations, and citations omitted).  "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Blomker*, 831 F.3d at 1059 (citations omitted).  If Mr. Allen establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework.  *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

To establish the third element of the *prima facie* case of retaliation, Mr. Allen must demonstrate that a causal connection existed between the protected activity and the adverse action. Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation."  *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005).  As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation.  *Sims v. Sauer–Sundstrand Co.*, 130 F.3d 341, 343 (8th Cir. 1997).  The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months.  *See, e.g.*, *Littleton*

*v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (concluding that a temporal gap of seven months "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (determining that a six-month gap was too long to give rise to an inference of causal connection); *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'") (internal citations omitted).

Here, Defendants argue that Mr. Allen has not made out a *prima facie* case of retaliation (Dkt. No. 35, at 21).  In his amended motion for judgment without a hearing, Mr. Allen asserts that he engaged in statutorily protected activity "because he previously filed an EEO complaint that was settled by the Department of Justice." (Dkt. No. 39-6, at 8, 10).  As Defendants point out, Mr. Allen has not provided any evidence on the record before the Court of the alleged EEO complaint purportedly filed on his behalf against the City of Marion, Arkansas (Dkt. No. 44, at 18).  Even if Mr. Allen had provided evidence of an EEO complaint that was settled by the Department of Justice on Mr. Allen's behalf in 2009, Mr. Allen has not provided any evidence, besides his assertion, that any Defendant involved in this case knew of his EEO activity prior to the events described in his complaint (Dkt. Nos. 44, at 18; 46, at 5).

Assuming Mr. Allen is correct that Defendants were aware of the prior EEO activity before he was suspended for five days in April 2021, Mr. Allen has still failed to state a claim for retaliation based on these facts.  The time lapse alone negates any inference of causation because there is no causal connection between Mr. Allen's asserted protected activity when the Department of Justice allegedly brought a suit on his behalf for discrimination in 2009 and his five-day suspension by the City in April 2021.  Based on the over 11-year time lapse between the alleged

protected activity and the suspension, the Court concludes that Mr. Allen has failed to present sufficient record evidence that a causal connection existed between the protected activity and the adverse action to survive the City's motion for summary judgment on his retaliation claim. *Littleton*, 568 F.3d at 645 (determining that a temporal gap of seven months was "not sufficiently contemporaneous" to indicate a causal connection).

Assuming Mr. Allen could establish a *prima facie* case of retaliation, the City presents record evidence of legitimate, nondiscriminatory reasons for its decision to suspend Mr. Allen in 2021 as set forth in detail in this Order.  Mr. Allen has not presented sufficient record evidence to demonstrate that these proffered reasons were pretextual and that retaliation was the but-for reason he was suspended.

Additionally, the Court notes that many of the incidents that Mr. Allen complains of as retaliation in this case occurred after he filed a complaint of discrimination against Defendants in this case (Dkt. No. 39-6, at 11).  Mr. Allen cannot assert that the filing of his complaint in this case constitutes protected activity as a basis for his retaliation claims because he did not exhaust these retaliation claims with the EEOC before filing suit in this case.[7]  For example, in his amended motion for decision without a hearing, Mr. Allen complains that "in another instance of disparate treatment" on November 27, 2021, Defendants changed his job title from Major to Grants/Certification Manager without notice or due process in violation of City policies and procedures, and then the City promoted Harvey Taylor, another police officer whose race is unknown, to the rank of Major approximately one month later (Dkt. Nos. 39-6, at 9-10; 46, at 6).

---

[7]  Mr. Allen asserted in his EEOC Charge that he was retaliated against for "assisting another officer in filing a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. No. 34-2, at 93).  Mr. Allen has not come forward with evidence to support this claim of protected conduct on the record before the Court.

In claiming that he is entitled to summary judgment on his retaliation claim, Mr. Allen refers to these events as being "stripped of his rank and assigned to the duties of a civilian" (Dkt. No. 39-6, at 11).  Mr. Allen argues that Defendants have not provided any evidence to "refute Plaintiff's allegations" on these claims (Dkt. No. 46, at 6).

To the extent that Mr. Allen attempts to assert an entirely new claim of discrimination based on the temporary change in his job title,[8] that claim does not exist in this lawsuit, and Defendants have no burden to "refute" Mr. Allen's allegations regarding it.  Mr. Allen did not exhaust a claim involving a change in job title with the EEOC or raise such a claim in his complaint in this lawsuit.  Mr. Allen's EEOC Charge was based on his being "placed on administrative leave, removed from the building and my supervisory authority taken away, required to attend mandatory training on policies and procedures, moved to a substation, and suspended because of my race, Black, sex, male, color, and in retaliation for assisting another officer in filing a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. No. 34-2, at 93).  The events surrounding Mr. Allen's temporary change in job title had not yet occurred when he filed his EEOC Charge on September 22, 2021.  There is no evidence on the record before the Court that Mr. Allen amended his EEOC Charge to raise a claim related to an alleged change in job title.  Further, on the record before the Court, there is no indication that Defendants are or were on notice of Mr. Allen filing a new charge of discrimination with the EEOC after November 27, 2021, and before Mr. Allen filed his complaint in this Court on December 28, 2021.  Mr. Allen has not moved in this case to amend his complaint to assert a new claim involving the change in

---

[8] On or around January 3, 2022, interim Chief Bradley informed Mr. Allen that he would keep the rank of Major because the rank was never formally eliminated by his predecessor former Chief Pope (Dkt. Nos. 36, ¶ 45; 34-2, ¶ 8).

his job title or any other new claim of retaliation, and under the Court's first Final Scheduling

Order, the time for filing amended pleadings expired on August 30, 2022 (Dkt. No. 25, ¶ 2).

For all these reasons, the Court grants summary judgment in favor of Defendants (Dkt. No.

34) and denies Mr. Allen's amended motion for decision without a hearing with respect to Mr.

Allen's retaliation claims under Title VII (Dkt. No. 39-6).

### E.    Mr. Allen's ADEA Claim

Mr. Allen asserts that his rights under the ADEA were violated by the City's actions.

Defendants argue that Mr. Allen is not entitled to relief under the ADEA because he failed to

exhaust his administrative remedies as required by the statute before filing a claim (Dkt. No. 35,

at 25).   Further, Defendants argue that, even if Mr. Allen had exhausted his administrative

remedies, Mr. Allen failed to state an ADEA claim (Dkt. No. 35, at 26–29).   Mr. Allen did not

respond to Defendants' ADEA arguments in his brief in support of response to Defendants'

response to plaintiff's motion for summary judgment (Dkt. No. 46).   In failing to respond to

Defendants' motion summary judgment on his ADEA claims, Mr. Allen has failed to contest the

arguments Defendants set forth in their motion for summary judgment, and Mr. Allen waived any

arguments that may have been available to him as to his ADEA claim.   *See Satcher v. Univ. of*

*Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis

for summary judgment constitutes waiver of that argument.").

On the record before the Court, Mr. Allen did not exhaust his administrative remedies with

respect to his ADEA claims (Dkt. No. 34-2, at 92–93).   A plaintiff bringing an ADEA claim must

first file a timely EEOC charge on the alleged acts of discrimination.   *See* 29 U.S.C. § 626(d)(1)

(establishing a 180-day limitation period for filing a charge for acts of discrimination for ADEA

claims).   In his Charge of Discrimination filed with the EEOC on September 22, 2021, Mr. Allen

did not check the box for discrimination based on age (Dkt. No. 34-2, at 92).  Further, when describing the particulars of the discrimination against him, Mr. Allen did not assert allegations of age discrimination.  Rather, Mr. Allen asserted that he was "placed on administrative leave, removed from the building and my supervisory authority taken away, required to attend mandatory training on policies and procedures, moved to a substation, and suspended because of my race, Black, sex, male, color and in retaliation for assisting another officer in filing a discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. No. 34-2, at 93).

The Court cannot conclude based on the record before it that Mr. Allen exhausted his administrative remedies with respect to his ADEA claim.  Therefore, the Court grants Defendants' motion for summary judgment and dismisses without prejudice Mr. Allen's ADEA claim (Dkt. No. 34).

### F.     Mr. Allen's Libel Claim

In his complaint, Mr. Allen alleges a libel claim against Defendants under Arkansas law (Dkt. No. 1).  Defendants move for summary judgment on Mr. Allen's libel claim (Dkt. No. 34). Mr. Allen does not address the claim in his amended motion for decision without a hearing (Dkt. No. 39-6).  In this Order, the Court grants summary judgment in favor of Defendants and denies Mr. Allen's amended motion for decision without a hearing on Mr. Allen's federal claims.  As a result, the Court declines to exercise supplemental jurisdiction over Mr. Allen's state law libel claim and dismisses this claim without prejudice.

### V.     Conclusion

It is therefore ordered that:

1.  the Court grants Defendants' motion to strike Mr. Allen's motion for summary judgment and statement of undisputed facts and renewed motion to deem facts admitted (Dkt. No. 62).

2.  the Court directs the Clerk of the Court to strike from the record Mr. Allen's motion for summary judgment and statement of undisputed material facts (Dkt. Nos. 60, 61).

3.  the Court grants Defendants' motion for summary judgment and dismisses with prejudice Mr. Allen's Title VII claims against the individual Defendants, Mr. Allen's Title VII claims of race and gender discrimination against Defendants, and Mr. Allen's Title VII claims of race and gender discrimination based on hostile work environment and retaliation against Defendants (Dkt. No. 34).

4.  the Court grants Defendants' motion for summary judgment and dismisses without prejudice Mr. Allen's ADEA claim against Defendants for failure to exhaust administrative remedies (Dkt. No. 34).

5.  the Court declines to exercise supplemental jurisdiction over Mr. Allen's state law claim for libel.

6.  the Court denies as moot Mr. Allen's motion for decision without a hearing (Dkt. No. 38).

7.  the Court denies Mr. Allen's amended motion for decision without a hearing (Dkt. No. 39-6).

So ordered this 29th day of March, 2024.

Kristine G. Baker
Chief United States District Judge